FILED
IN OPEN COURT

NOV 1 5 2023

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL NO. 2:23cr 135 |
| | ) | |
| v. | ) | 18 U.S.C. § 1343 |
| | ) | Wire Fraud |
| MARIA REICH, | ) | (Counts One-Eight) |
| | ) | |
| Defendant. | ) | 18 U.S.C. § 1001 |
| | ) | False Statements |
| | ) | (Count Nine) |
| | ) | |
| | ) | Forfeiture |

## INDICTMENT

THE GRAND JURY CHARGES THAT:

### GENERAL ALLEGATIONS

At all times material to this information:

A.  Reich and ASOC, Inc.

1.  MARIA REICH was President of ASOC, Inc. d/b/a On Call Accountants ("OCA"), a Virginia Beach-based business which offered bookkeeping, accounting, and payroll services to small business clients.

2.  Company A is a family-owned company that manufactures condiments and is located in Virginia Beach, Virginia.

3.  MARIA REICH and On Call Accountants did the bookkeeping for Company A

4.  MARIA REICH would prepare checks and schedule electronic payments on behalf of Company A in order to pay the company's bills.

5.  MARIA REICH had personal and business credit cards at Capital One Bank and bank accounts at Navy Federal Credit Union.

B. EIDL Loans

6. In response to the economic crisis caused by the coronavirus pandemic, the Small Business Administration ("SBA") made government-guaranteed loans available to qualified small businesses through the Economic Injury Disaster Loan ("EIDL") program. The purpose of EIDLs was to enable small businesses to meet financial obligations and operating expenses in light of the pandemic. The SBA promulgated regulations concerning eligibility for an EIDL. Eligible businesses seeking an EIDL could apply for such a loan directly through the SBA.

7. To qualify for an EIDL, an applicant had to meet certain criteria, including, among other things, that it was in operation prior to the pandemic, and had regular operating expenses, which would have been paid if not for the pandemic. Moreover, the amount of the loan that could be approved under the EIDL program typically was a function of the applicant's working capital. The proceeds of an EIDL could be used for working capital and normal operating expenses. The proceeds of an EIDL were not permitted to be used to fund the borrower's ordinary day-to-day living expenses or to purchase personal real estate. If qualified, an EIDL loan applicant was also entitled to loan modifications to increase the amount of an original loan.

8. If an EIDL loan or advance is approved, that information is wired from the SBA server in the Eastern District of Virginia to a Treasury Department server located outside of Virginia.

9. EIDL loans were benefits authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as

2

those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. § 5122).

## COUNT ONES THROUGH SEVEN
### (Wire Fraud)

10. Paragraphs 1 through 9 of the General Allegations section of this Indictment are incorporated by reference as though fully set forth herein.

11. From in or about January 2015 and continuing through January 2019, in the Eastern District of Virginia and elsewhere, defendant MARIA REICH, for the purpose of executing and attempting to execute the following scheme and artifice to defraud and for obtaining money and property by materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communication in interstate commerce writings, signs, signals, pictures, and sounds for the purposes of execution of such scheme and artifice. This scheme and artifice operated in substance as follows:

### PURPOSE OF THE SCHEME

12. The purpose of the scheme and artifice to defraud was for REICH to obtain money she was not entitled to by using her position with OCA to steal, purloin, embezzle, and knowingly convert money from Company A.

### MANNER AND MEANS

The manner and means by which REICH carried out the scheme and artifice to defraud included, but were not limited to, the following:

13. REICH wrongfully obtained money and retained the wrongfully obtained money by preparing and sending ACH, mobile, and check payments from Company A's bank accounts

directly to REICH and to REICH's personal and business credit card accounts at Capital One Bank.

In furtherance of the scheme, REICH caused the submission of wire transmissions in interstate commerce.

14. As a result of the aforesaid scheme and artifice, REICH received Company A's funds to which she was not entitled in the approximate amount of $1,132,693.

15. On or about the dates listed below, in the Eastern District of Virginia and elsewhere, MARIA REICH, for the purpose of executing the above-described scheme and artifice to defraud and to fraudulently obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and attempting to do so, did knowingly transmit and cause to be transmitted, by means of a wire communication in interstate commerce, certain writings, signs, signals, pictures, and sounds, each transmission being a separate count of this Indictment as indicated:

| Count | Date | Amount Paid Via Interstate Wire from Company A's Towne Bank Account to Reich's Capital One Account |
|---|---|---|
| ONE | November 28, 2018 | $1,038.91 |
| TWO | December 4, 2018 | $1,210.28 |
| THREE | December 11, 2018 | $1,294.61 |
| FOUR | December 14, 2018 | $3,561.73 |
| FIVE | December 19, 2018 | $1,716.83 |
| SIX | December 26, 2018 | $1,457.00 |
| SEVEN | December 31, 2018 | $1,551.25 |

(In violation of Title 18, United States Code, Section 1343.)

## COUNT EIGHT
## (Wire Fraud)

16. Paragraphs 1 through 9 of the General Allegations section of this Indictment are incorporated by reference as though fully set forth herein.

17. From in or about April 2021 and continuing through August 2021, in the Eastern District of Virginia and elsewhere, defendant MARIA REICH, for the purpose of executing and attempting to execute the following scheme and artifice to defraud and for obtaining money and property by materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communication in interstate commerce writings, signs, signals, pictures, and sounds for the purposes of execution of such scheme and artifice. This scheme and artifice operated in substance as follows:

### PURPOSE OF THE SCHEME

18. The object of the scheme and artifice to defraud was for REICH to wrongfully obtain money and to retain the wrongfully obtained EIDL loan money by fraudulently applying for the loan, knowing she would use the funds for non-business expenses such personal, family, or household expenses.

### MANNER AND MEANS

19. The manner and means by which REICH carried out the scheme and artifice to defraud included, but were not limited to, the following:

20. In March 2020, REICH applied for an EIDL loan on behalf of OCA and requested a $150,000 loan. In the EIDL application, REICH certified that none of the EIDL funds would be used for non-business expenses.

21. In May 2020, the SBA funded the EIDL loan to REICH and OCA for $150,000. On May 21, 2020, when REICH signed the Loan and Security Agreement, she specifically certified that none of the EIDL funds are or would be for "personal, family, or household expenses."

22. In April 2021, REICH applied for a modification of the EIDL loan, specifically to increase the loan from $150,000 to $500,000. In the EIDL application, REICH certified that none of the EIDL funds would be used for non-business expenses.

23. In July 2021, the SBA approved the modification and funded the EIDL loan to REICH and OCA for an additional $350,000. On July 28, 2021, when REICH signed the Loan and Security Agreement for the modified loan, she specifically certified that none of the EIDL funds are or would be for "personal, family, or household expenses."

24. On August 3, 2021, an interstate wire deposit from the SBA for $350,000 was made to OCA's Truist bank account. REICH immediately transferred $150,000 to her personal Navy Federal Credit Union (NFCU) personal banking accounts.

25. On September 27, 2021, REICH withdrew approximately $93,416 from her NFCU savings account via a check. The money was used for a downpayment for the purchase of the residence located at 5317 Stratford Case Drive, Virginia Beach, which was used as REICH's family residence. REICH and her family continue to the reside at this residence.

26. In addition to the downpayment for the residence, from the $150,000 REICH transferred to her personal NFCU accounts, REICH used the EIDL funds for the following:

    a. $5,000 into her minor children's bank accounts;

    b. $2,349 to her Kohl's credit card;

6

    c. $7,194 in mortgage payments on her personal residence; and

    d. $10,883 for personal loan, credit card, and life insurance payments.

27. Of the remaining EIDL funds from the $350,000 EIDL loan, REICH made the following payments for personal, household, and/or family expenses:

    a. $65,009 to her Capital One credit card;

    b. $21,837 to her PayPal account;

    c. $14,378 in home improvement costs;

    d. $13,224 in automobile expenses;

    e. $8,004 in dining and grocery expenses; and

    f. $7,808 in entertainment expenses.

28. As a result of the aforesaid scheme and artifice, REICH received and spent EIDL funds to which she was not entitled in the approximate amount of $249,102.

(In violation of Title 18, United States Code, Section 1343.)

## COUNT NINE
## (False Statements)

29. Paragraphs 1 through 9 of the General Allegations section of this Indictment are incorporated by reference as though fully set forth herein.

30. On or about May 3, 2023, in Norfolk, within the Eastern District of Virginia, defendant MARIA REICH did willfully and knowingly make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, by making false, fictitious, and fraudulent statements to the Federal Bureau of Investigation, at the United States Attorney's Office in Norfolk, Virginia.

(In violation of Title 18, United States Code, Section 1001(a)(2).)

## FORFEITURE

THE GRAND JURY FURTHER FINDS PROBABLE CAUSE THAT:

1. Defendant MARIA REICH, if convicted of any of the violations alleged in Counts One through Eight of this Indictment, shall forfeit to the United States, as part of the sentencing pursuant to Federal Rule of Criminal Procedure 32.2, any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

2. If any property that is subject to forfeiture above is not available, it is the intention of the United States to seek an order forfeiting substitute assets pursuant to Title 21, United States Code, Section 853(p) and Federal Rule of Criminal Procedure 32.2(e).

3. The property subject to forfeiture includes, but is not limited to, a sum of money of approximately $1,381,795, representing the proceeds MARIA REICH obtained from the offenses charged.

(All in accordance with Title 18, United States Code, Section 981(a)(1)(C), as incorporated by Title 28, United States Code, Section 2461(c); and Title 21, United States Code, Section 853(p).)

*United States v. MARIA REICH*
Criminal No. 2:23cr 135

Pursuant to the E-Government Act, the original of this page has been filed under seal in the Clerk's Office.

A TRUE BILL:

**REDACTED COPY**

_____
FOREPERSON

JESSICA D. ABER
UNITED STATES ATTORNEY

By: _____
Elizabeth Yusi (Va. Bar No. 91982)
Assistant United States Attorney
Attorneys for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Office - 757-441-6331
Facsimile - 757-441-6689
E-Mail – elizabeth.yusi@usdoj.gov

10